KELYNACK v YAMAHA MOTOR CORPORATION, USA

Docket No. 84835. Submitted April 1, 1986, at Detroit. Decided May 21, 1986.

David Kelynack purchased a Yamaha motorcycle from Anderson's Vehicle Sales, Inc. The motorcycle was covered by a six-month limited warranty that, in essence, provided that the manufacturer would replace any defective part and make any necessary repairs that were required by reason of faulty workmanship or material attributable to the manufacturer. After ten weeks of use, the motorcycle's engine made a tapping noise and Kelynack returned the vehicle to Anderson's. While a mechanic was operating the vehicle, the engine seized up. An employee of Anderson's misdiagnosed the problem and ordered the wrong parts. When, three weeks later, the engine was disassembled for installation of the ordered parts, it was ascertained by an Anderson mechanic that the oil pump had failed necessitating replacement of almost every major engine component. Anderson's did not, however, inform Kelynack of this turn of events. About seven weeks after he had first returned the motorcycle to Anderson's for repairs, Kelynack filed a complaint with the Attorney General's office. In a response to an inquiry by the Attorney General's office, Anderson's explained the situation and indicated that it was seeking approval from Yamaha to replace the damaged engine with a new engine. A copy of that letter was forwarded to Kelynack. A week later, Anderson's sent a letter to Kelynack indicating that Yamaha had authorized the repair of the engine. Kelynack, three days later, notified Anderson's that he would not accept the motorcycle with a rebuilt engine, and, in fact, refused to

REFERENCES

Am Jur 2d, Commercial Code §§ 8, 14.

Am Jur 2d, Sales §§ 1-9, 465-502, 690-852, 1244-1253.

Affirmations or representations made after the sale is closed as basis of warranty under UCC § 2-313(1)(a). 47 ALR4th 200.

Construction and effect of new motor vehicle warranty limiting manufacturer's liability to repair or replacement of defective parts. 2 ALR4th 576.

See also the annotations in the ALR3d/4th Quick Index under Uniform Commercial Code; Warranties.

accept it when it was finally repaired some three weeks later. Kelynack attempted to revoke the sales contract. Kelynack demanded that Yamaha Motor Corporation, USA take back the motorcycle and return his purchase money. Yamaha refused. The motorcycle was thereafter sold, the loan secured by the motorcycle was discharged and the excess funds were returned to Kelynack. Kelynack brought an action in Macomb Circuit Court against Yamaha and Anderson's, claiming that under the circumstances he had a right to revoke his acceptance and seeking damages, including attorney fees, for breach of the sales agreement. Defendants claimed that the limited warranty provided plaintiff's sole remedy and that, in any event, plaintiff's attempt at revocation was not timely. The trial court, Robert J. Chrzanowski, J., held that the limited warranty failed in its essential purpose and that plaintiff had properly revoked his acceptance. Plaintiff was awarded the unrefunded balance of his purchase money, court costs and attorney fees, in the amount of $8,520. Defendant Yamaha appealed. *Held:*

1. While parties to a sales agreement may agree to limit remedies and damages, where, as here, such agreement failed in its purpose, the parties may pursue other remedies under the Uniform Commercial Code.

2. The trail court did not err in concluding that revocation of acceptance was available to plaintiff by reason of the delay in effecting repairs.

3. Plaintiff's revocation was timely.

4. Where, as here, the exclusive remedy provision of a warranty is held to be inoperative, any limitation of damages provision in the warranty is likewise inoperative.

5. Attorney fees were properly included as an element of damages for breach of warranty.

Affirmed and remanded with instructions.

1. SALES — WARRANTIES — UNIFORM COMMERCIAL CODE — REMEDIES.

The parties to a sales agreement may, under the Uniform Commercial Code, agree to limit remedies and damages for breach of the agreement; however, where the limited remedy fails in its purpose or operates to deprive either party of the value of the bargain, the parties may pursue other remedies provided in the Uniform Commercial Code (MCL 440.2719; MSA 19.2719).

2. SALES — WARRANTIES — UNIFORM COMMERCIAL CODE — REMEDIES.

A warranty on a motorcycle which limits the remedy for any defect attributable to faulty workmanship or materials to replacement of the defective part fails in its essential purpose within the meaning of the Uniform Commercial Code and thus

entitles the purchaser to pursue other remedies where the failure of a defective part after ten weeks of use renders the motorcycle completely inoperable and it takes three months for repairs to be effected (MCL 440.2719; MSA 19.2719).

3. SALES — WARRANTIES — REPAIRS — GOOD FAITH.

A good faith effort by a manufacturer to effect repairs on a defective product does not excuse its failure to repair and return the product within a reasonable time; commendable efforts alone do not relieve a seller of its obligation to repair.

4. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPTANCE.

A buyer may, under the Uniform Commercial Code, revoke his acceptance of goods whose nonconformity substantially impairs the value of the goods to the buyer; the buyer must show that the nonconformity has a devaluing effect on him and that the buyer's assessment is factually correct (MCL 440.2608; MSA 19.2608).

5. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPTANCE.

It is not error for a trial court to find a nonconformity such as will justify revocation of acceptance under the Uniform Commercial Code where a motorcycle, after ten weeks of use, suffers a part failure which renders the engine completely inoperative and requires three months to repair and the purchaser testifies that, because of the fundamental nature of the defect and the delay in repair, he lost all faith in the manufacturer and the dealer and his faith in the motorcycle was destroyed (MCL 440.2608; MSA 19.2608).

6. SALES — BREACH OF WARRANTY — WARRANTIES — LIMITATION OF DAMAGES.

Attorney fees are allowable, in the trial court's discretion, as an element of damages incurred as a result of a breach of warranty under the Uniform Commercial Code (MCL 440.2715; MSA 19.2715).

7. SALES — REMEDIES — WARRANTIES — LIMITATION OF DAMAGES.

The failure of an exclusive remedy provision of a warranty made with respect to the sale of goods renders any limitation of damages provision inoperative.

*Alvis Phillip Easter,* for plaintiff.

*Maxwell, Smith, Hanson & Mulroy* (by *William C. Hanson*), for defendant.

Before: Cynar, P.J., and Wahls and E. E. Borradaile,* JJ.

Per Curiam. Defendant Yamaha Motor Corporation, usa, appeals as of right the decision of a Macomb Circuit Court judge granting plaintiff damages for breach of warranty, plus attorney fees pursuant to MCL 440.2714, 440.2715; MSA 19.2714, 19.2715.

The events giving rise to the present action are provided in the following stipulated statement of facts:

On May 28, 1981, plaintiff purchased a motorcycle from defendant Anderson's Vehicle Sales, Inc., which was manufactured by defendant Yamaha Motor Corporation, USA. Payment was partially made in cash and partially financed. The National Bank of Detroit, as assignee of the purchase agreement, was also a codefendant at the trial court level but is not a party to this appeal.

The vehicle carried a six-month limited warranty which provided in part:

> During the period of warranty any authorized Yamaha dealer will provide:
> 1. The replacement of any part adjudged defective by Yamaha due to faulty workmanship or material from the factory.
> 2. Any repairs made necessary by faulty workmanship or material from the factory.

On August 15, 1981, while the vehicle was still under warranty, it developed a tapping noise in the engine. At this time the vehicle had been driven only 3,115 miles. Plaintiff immediately stopped operating the vehicle and returned it to Anderson's several days later. The acting service

---

* Circuit judge, sitting on the Court of Appeals by assignment.

manager examined the bike and prepared a service order.

On August 20, 1981, Anderson's informed plaintiff that the engine had seized up while a mechanic had been operating it. Plaintiff was also told at that time not to worry because the problem was not serious and would be covered by warranty. An employee of Anderson's who was not a licensed mechanic diagnosed what he thought to be the problem and immediately ordered the necessary parts for repair. Although replacement parts could usually be obtained within one week, it took approximately three weeks to obtain these parts.

When the parts were delivered, a second Anderson's employee (a licensed mechanic) began working on the bike. It was discovered that the problem had been misdiagnosed and was more serious than first believed. The oil pump had failed causing serious engine damage, requiring replacement of nearly every major engine component. Plaintiff was not immediately notified of this finding.

On October 12, 1981, plaintiff wrote NBD a letter advising it that he was stopping payment because of the alleged breach of warranty. He also stated that a complaint was filed with the Attorney General's office and that an action was pending on the matter. Anderson's responded to an inquiry from the Attorney General's office by a letter dated October 19, 1981, stating in part:

> Upon receipt of these parts our mechanic started work on this vehicle, only to find that the entire lower end (crankshaft) was completely destroyed, due to oil pump failure. At this time we are waiting to hear from the Yamaha factory representative to get their approval on a complete new engine. We feel that this would be the best way to repair this vehicle. We will do everything

in our power to rectify this problem as soon as possible.

Plaintiff subsequently received from the Attorney General's office a copy of Anderson's letter. This was the first information he was given that the engine was seriously damaged.

On October 26, 1981, Anderson's wrote to plaintiff that they had received Yamaha's permission to *repair* the engine and that the parts would be ordered that day. Anderson's estimated that delivery of the parts would take two weeks and repairs would be completed in an additional week. Plaintiff responded by letter on October 29, 1981, stating that he would accept only a new engine with a new warranty, not a rebuilt engine.

On November 25, 1981, Anderson's called plaintiff and told him that his motorcycle was repaired and ready to be picked up. It is undisputed that the bike was in proper working order at this time. Plaintiff refused to accept the bike and attempted to revoke the sales contract on the grounds that the repairs were not made within a reasonable time and that his faith in the motorcycle had been destroyed.

On December 28, 1981, plaintiff instructed Yamaha to take the motorcycle back and return his purchase money. Yamaha refused this demand. The bike was subsequently sold on plaintiff's behalf. NBD was paid off and plaintiff received a partial refund of his purchase price.

Plaintiff then commenced this action based on the Consumer Protection Act, the Uniform Commercial Code, and the Magnuson-Moss Warranty Act. He sought recovery for out-of-pocket expenditures, attorney fees and costs. The trial court held that the limited warranty of repair or replacement

contained in the sales contract had failed in its essential purpose, thereby allowing plaintiff to seek remedies provided by the UCC, MCL 440.2719(2); MSA 19.2719(2), and that plaintiff had properly revoked his acceptance of the motorcycle because the nonconformity substantially impaired its value to him. MCL 440.2608; MSA 19.2608. Plaintiff was awarded the unrefunded balance of his purchase money, court costs, and attorney fees in the amount of $8,520. Defendant Yamaha argues that the trial court erred in finding that plaintiff properly revoked his acceptance of the motorcycle.

Under § 2-719 of the UCC, MCL 440.2719; MSA 19.2719, the parties to a sales agreement may agree to limit remedies and damages for breach of the agreement. However, subsection (2) further provides that, where the limited remedy fails in its purpose or operates to deprive either party of the value of the bargain, the parties may pursue other remedies provided elsewhere in the UCC. *Latimer v William Mueller & Sons, Inc,* 149 Mich App 620; 386 NW2d 618 (1986); *North American Steel Corp v Siderius, Inc,* 75 Mich App 391; 254 NW2d 899 (1977), lv den 402 Mich 810 (1977). One remedy available to a buyer for the seller's breach of warranty is revocation. MCL 440.2608; MSA 19.2608.

The purchase agreement between plaintiff and defendant contained a limited warranty that provided in part:

DURING THE PERIOD OF WARRANTY any authorized Yamaha dealer will provide:

1. The replacement of any part adjudged defective by Yamaha due to faulty workmanship or material from the factory.

2. Any repairs made necessary by faulty workmanship or material from the factory.

While the terms of this provision would generally restrict plaintiff's remedies to replacement of the defective part, we agree with the finding of the trial court that in this case the limited warranty failed in its essential purpose and plaintiff was therefore entitled to pursue other remedies. MCL 440.2719; MSA 19.2719.

Here, plaintiff had the motorcycle in his possession for only ten weeks before it became totally inoperable. He immediately returned it to the dealer where it remained for over three months. By the time the motorcycle was returned to him, it was late November and the weather precluded its use.

While we do not dispute defendant Yamaha's contention that it acted in good faith, its good faith efforts do not excuse its failure to have the motorcycle repaired and returned to plaintiff within a reasonable time. "Commendable efforts alone do not relieve a seller of his obligation to repair." *Jacobs v Rosemone Dodge-Winnebago South,* 310 NW2d 71, 75 (Minn, 1981). Where a manufacturer or dealer has limited its obligation under the sales agreement to repair or replace defective parts the seller does not have an unlimited time to make the repairs, but rather must repair or replace the parts within a reasonable time. See Anno: *Construction and effect of new motor vehicle warranty limiting manufacturer's liability to repair or replacement of defective parts,* 2 ALR4th 576, § 5[d], pp 602-604 and cases cited therein; 67A Am Jur 2d, Sales, § 923, pp 326-327. Further, the manufacturer's or dealer's failure to make repairs need not be willfully dilatory or even negligent for the damage to the buyer is the same whether the seller acts in good faith or in bad. In either case, the buyer loses the substantial benefit of his bargain. *Cayuga Harvester, Inc v*

*Allis-Chalmers Corp,* 95 App Div 2d 5; 465 NYS2d 606 (1983).

What is a reasonable time for taking any action depends on the nature and circumstances of the case. Here plaintiff's motorcycle remained inoperable for more than three months. Moreover, the court found that the cause of the delay was the misdiagnosis by defendant's employee. Under the circumstances of this case, we are not persuaded that the court erred in finding the delay unreasonable. We conclude that, since defendant failed to repair the motorcycle within a reasonable time, plaintiff was deprived of his exclusive remedy and the limited warranty failed in its essential purpose.

Defendant Yamaha also argues that plaintiff failed to properly revoke his acceptance since he did not timely notify defendant of the revocation. UCC § 2-608, MCL 440.2608; MSA 19.2608, provides that the buyer may revoke his acceptance of the goods whose nonconformity substantially impairs its value to him. In order to meet this test, the buyer must show that the nonconformity has a devaluing effect on him and that the buyer's assessment is factually correct. *Colonial Dodge, Inc v Miller,* 420 Mich 452, 458; 362 NW2d 704 (1984).

Plaintiff testified that, because of the delay and the fundamental nature of the defect, he lost confidence in the manufacturer and dealer and his faith in the motorcycle was destroyed. Based on plaintiff's testimony, the trial court found that the nonconformity in the motorcycle substantially impaired its value to him. Defendant does not dispute this finding on appeal and we are satisfied that, under the facts of this case, defendant Yamaha's failure to replace the damaged engine with a complete new engine constituted a substantial

impairment in the value of the motorcycle to plaintiff.

Subsection 2 of ucc 2-608 requires the buyer to notify the seller of his revocation within a reasonable time after he discovers the defect. Defendant Yamaha contends that plaintiff's revocation was not timely. This contention is contradicted by the record. As previously indicated, plaintiff first learned that defendant Yamaha intended to rebuild the damaged engine by letter dated October 26, 1981. Plaintiff responded by letter dated October 29 that he found a rebuilt engine "totally unacceptable" and that he refused acceptance of the motorcycle. We find that notice of revocation was given within a reasonable time.

Defendant Yamaha's final claim is that the court abused its discretion in awarding plaintiff attorney fees as consequential damages where the warranty excluded consequential damages. Defendant Yamaha argues that, even if the limitation of remedy provision failed in its essential purpose, its failure does not invalidate the provision excluding consequential damages.

In *Cady v Dick Loehr's, Inc,* 100 Mich App 543; 299 NW2d 69 (1980), a panel of this Court ruled that § 2-715 of the Uniform Commercial Code, MCL 440.2715(1); MSA 19.2715(1), confers discretion on the trial judge to award attorney's fees as an element of the damages incurred from a breach of warranty. However, it is not clear from our reading of *Cady* whether the parties' sales agreement contained a provision excluding incidental or consequential damages. Here the limited warranty contained a provision specifically excluding "any incidental or consequential damages". Such limitations of liability are permitted under ucc § 2-719(3) unless the limitation is unconscionable.

Plaintiff argues that the repair and replace pro-

vision and the limitation of damages clause are mutually dependent, and the defendant Yamaha's failure to perform under the first causes the latter to fail as well. Defendant Yamaha contends that the two provisions are independent. While we can find no Michigan case which has decided this issue, many other jurisdictions have addressed the question and reached conflicting conclusions. Compare *Cayuga Harvester, supra,* and *Stutts v Green Ford, Inc,* 47 NC App 503; 267 SE2d 919 (1980) (even if the repair and replacement provision fails in its essential purpose, the exclusion of consequential damages provision remains in effect), with *Clark v International Harvester Co,* 99 Idaho 326; 581 P2d 784 (1978), and *Koehring Co v API, Inc,* 369 F Supp 882 (ED Mich, 1974) (in which the courts refused to restrict the buyers to the limitation of liability provision).

We agree with those jurisdictions which have held that the failure of an exclusive remedy provision contained in a warranty renders the limitation of damages provision inoperable. In our view, the repair and replace remedy and the exclusion of consequential damages are integral and interdependent parts of the warranty and once defendant Yamaha is found to have breached its obligation to repair or replace, the provision excluding consequential damages will be deemed to have failed and the buyer may pursue the general remedies provided by the UCC. To hold otherwise would permit the seller to repudiate its limited obligation under the warranty while shielding itself behind another provision of the very warranty it has repudiated. This result is particularly untenable where, as here, the bulk of the buyer's damages are the consequential damages which the seller now seeks to avoid. See *Jones & McKnight Corp v Birdsboro Corp,* 320 F Supp 39 (ND Ill, 1970). In

this case, failure to award plaintiff attorney's fees would in effect result in no remedy at all. We find that the court did not abuse its discretion in awarding attorney's fees as consequential damages.

For the reasons set forth above, we believe that plaintiff is also entitled to appellate attorney fees. See *Central Transport, Inc, v Fruehauf Corp,* 139 Mich App 536, 549; 362 NW2d 823 (1984). Accordingly, we remand for a determination of reasonable appellate attorney fees.

Affirmed and remanded.