81 F.3d 161
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Anthony T. OLBRYS, Plaintiff-Appellant/Cross-Appellee,
v.
PETERSON BOAT WORKS, INC. and Kalamazoo Ferry Company,
d/b/a/ Tower Marine, Inc.,
Defendants-Appellees/Cross-Appellants.
 Nos. 94-2016, 94-2070.
 United States Court of Appeals, Sixth Circuit.
 March 28, 1996.
 
 Before: MARTIN, GUY, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 In February 1988, plaintiff, Anthony T. Olbrys, entered into an oral agreement with defendants, Peterson Boat Works, Inc. (Peterson) and Kalamazoo Ferry Company, doing business as Tower Marine, Inc. (Tower), for the construction of a 50-foot custom-built dinner cruise vessel. Olbrys intended to begin operating the vessel during the 1988 tourist season.
 
 
 2
 The vessel was to meet U.S. Coast Guard certification for carriage of up to 49 passengers in unprotected waters. Peterson's marine architectural firm, Seaton-Neville Naval Architects designed the vessel, incorporating a standard hull design it had previously created for Peterson. Peterson subcontracted the construction work to Tower.[1]
 
 
 3
 While the boat was under construction, Olbrys made several requests for additional specific equipment to be placed on the vessel. Although Peterson complied with these requests, the company indicated that the equipment would contribute adversely to the vessel's weight. Olbrys nevertheless insisted on these features. As constructed, the vessel failed to pass U.S. Coast Guard certification. During construction, Peterson had periodically invoiced Olbrys for materials, labor and manufacturing overhead, which Olbrys paid. Olbrys also made deposits to his account with Peterson. Olbrys fell into arrears on his payments, however, and by the time relations between the parties soured, Olbrys owed $238,471.10. Rather than pay the outstanding balance, Olbrys filed this lawsuit. Defendants counterclaimed for the balance owed under the contract and tendered the boat to plaintiff, which he refused to accept.
 
 
 4
 In his complaint, Olbrys asserted three theories of recovery: (1) breach of contract; (2) breach of express and implied warranties, including the implied warranties of merchantability and fitness for a particular purpose; and (3) negligence. Defendants' counterclaim alleged four causes of action: (1) breach of contract for the unpaid balance of $238,471; (2) account stated in the same amount; (3) quantum meruit; and (4) trespass/conversion in the amount of $57,896.
 
 
 5
 The case proceeded to trial. Defendants argued estoppel in defense to Olbrys' breach of contract claim. They further contended that they had specifically disclaimed any responsibility for ensuring that the vessel would achieve its intended use. Olbrys in turn argued duress in response to defendants' contract claim and generally denied liability under their plaintiffs' other theories.
 
 
 6
 At the conclusion of the trial, the case was submitted to the jury utilizing three verdict forms, one for each party.[2] As to Olbrys' claims, the jury found that both Peterson and Tower had breached implied warranties made to Olbrys and awarded Olbrys damages in the amount of $65,855 as to Tower and $185,302 as to Peterson. The jury found in favor of defendants on Olbrys' breach of contract claim, however, and therefore awarded no damages.
 
 
 7
 As to defendants' counterclaims, the jury found that Olbrys had breached the contract and awarded Peterson $88,471.[3] The jury further found Olbrys liable under defendants' account stated claim and awarded $238,471.
 
 
 8
 Pursuant to the jury's findings, the district court awarded Olbrys $185,302 on his claim against Peterson and $65,855 on his claim against Tower. The court also awarded defendants $238,471, the amount provided under defendants' account stated claim, and subsumed within that amount the $88,471 awarded by the jury for Olbrys' breach of the contract.[4] This resulted in a net award to Olbrys of $12,686.
 
 
 9
 Olbrys then filed a motion to alter or amend the judgment or for a new trial pursuant to Fed.R.Civ.P. 59(e). In his motion he argued that the jury's verdict on the account stated claim was inconsistent with its verdict on the breach of contract claim, and that the court, by entering judgment on the account stated claim, overcompensated the defendants. He asked the court to either vacate the judgment for defendants on that claim or order a new trial on the issue of damages. The district court denied the motion. The court did, however, award attorney fees to plaintiff as incidental damages under Mich.Comp.Laws Ann. § 440.2715(1) (West 1994) as a result of plaintiff recovering on his breach of implied warranty claim. The parties then filed cross-appeals.
 
 
 10
 After completing our review of the record, we have concluded that this matter must be remanded for further proceedings.
 
 I.
 
 11
 We first consider Olbrys's claim that the district court's judgment overcompensates defendants on their claims. Olbrys points out that defendants retain possession of the vessel with an estimated value of $150,000 and recover the entire balance due on the boat, $238,471.10. The purpose of awarding damages is to compensate for damages incurred, not to provide a plaintiff with a windfall. See, e.g., Lawrence C. Young, Inc. v. Servair, Inc., 190 N.W.2d 316, 317 (Mich.App.1971). In this case, the district court's judgment is silent as to possession of the boat. To the extent it may be construed to permit defendants to retain possession of the vessel despite full recovery on their claims, we agree with Olbrys that such a result would be erroneous. Defendants make plain that Peterson "took possession of the vessel so as to secure payment of the amount that was owed by Olbrys." Now that payment has been ordered, possession should pass to Olbrys or he should be credited with the fair market value of the boat against the judgment amount awarded to defendants.
 
 
 12
 In remanding, we note that the district court, in denying plaintiff's motion to alter or amend judgment or for a new trial, stated as follows:
 
 
 13
 The jury found that defendants submitted a bill to plaintiff which plaintiff agreed was correct and which he failed to pay within a reasonable time. Therefore, the jury found for defendants on the account stated claim. The jury also found that defendants were liable to plaintiff based on breach of one or more of the claimed implied warranties. Accordingly, in net effect, the jury did not award the entire account stated claim.
 
 
 14
 (App. at 58.) We find the court's conclusion to be in error. The net effect of what occurred is that defendants' liability to Olbrys based upon their breach of warranties was offset in part by the amount that Olbrys still owed for the boat. Contrary to the court's finding, the jury did award the full cost of the boat to defendants under their account stated theory.
 
 II.
 
 15
 We next consider defendants' cross-appeal of the attorney fee award. The district court awarded Olbrys attorney fees under Michigan's Uniform Commercial Code provision, Mich.Comp.Laws Ann. § 440-2715(1) (West 1994). That provision, which was adopted verbatim from the Uniform Commercial Code, see U.C.C. § 2-715 (1989), provides in pertinent part as follows:
 
 
 16
 (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
 
 
 17
 Mich.Comp.Laws Ann. § 440.2715(1) (West 1994). In support of its determination, the district court relied on Cady v. Dick Loehr's, Inc., 299 N.W.2d 69 (Mich.App.1980). The Cady court, in a case of first impression, addressed whether incidental damages authorized under Mich.Comp.Laws Ann. § 440-2715(1) included payment of attorney fees. The court's analysis was brief and we set it out in its entirety:
 
 
 18
 This Court in Taxpayers & Citizens in the Public Interest v. Dept. of State Highways, 70 Mich.App. 385; 245 N.W.2d 761 (1976), and Superior Public Rights, Inc v. Dept. of Natural Resources, 80 Mich.App. 72; 263 N.W.2d 290 (1977), held that under section 3(3) of the Environmental Protection Act, M.C.L. 691.1203(3); M.S.A. § 14.528(203)(3), the clause "[c]osts may be apportioned to the parties if the interests of justice require" gave the trial judge the right to exercise his discretion to grant attorneys' fees.
 
 
 19
 Similarly, we find that the language of M.C.L. §§ 440.2714, 440.2715; M.S.A. § 19.2714, § 19.2715, confers on the trial court discretion to award attorneys' fees as an element of the damages incurred as a result of a breach of warranty. Under the facts of this case, the trial court's exercise of its discretion to award attorneys' fees as a "reasonable expense incident to the breach" was proper.
 
 299 N.W.2d at 71-72.[5]
 
 20
 When deciding a diversity case under state law, a federal court must apply the law of the state's highest court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from "all relevant data." Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir.1985). Relevant data include the state's appellate court decisions, Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 n. 3 (1988) (quoting West v. American Tel. & Tel. Co., 311 U.S. 223, 237-38 (1940)), and the majority rule among other states, Angelotta v. American Broadcasting Corp., 820 F.2d 806, 807 (6th Cir.1987). State appellate court decisions are not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would have decided otherwise. 485 U.S. at 630 n. 3.
 
 
 21
 Thus we consider whether the Michigan Supreme Court would agree with the Michigan Court of Appeals' decision in Cady that § 440.2715(1) provides for attorney fees as an element of incidental damages. We think it would not. The Michigan Supreme Court recently summarized the rules governing statutory interpretation:
 
 
 22
 The cardinal rule of statutory construction is to identify and to give effect to the intent of the Legislature. The first step in ascertaining such intent is to focus on the language in the statute itself. If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written.
 
 
 23
 Where the meaning of statutory language is not clear, judicial construction becomes necessary. Courts are to accord statutory words their ordinary and generally accepted meaning. Moreover, when courts interpret a particular phase in a statute, they must, whenever possible, construe the phrase in such a way that the interpretation does not conflict with, or deny effect to, other portions of the statute.
 
 
 24
 Piper v. Pettibone Corp., 542 N.W.2d 269, 271-72 (Mich.1995) (quoting Turner v. Auto Club Ins. Ass'n. 528 N.W.2d 681, 683-84 (Mich.1995) (citations omitted). In addressing the language of § 440.2715, we note initially that as a rule, attorney fees are not recoverable as an element of costs or damages. See, e.g., Burnside v. State Farm Fire and Casualty Co., 528 N.W.2d 749, 751 (Mich.App.1995) (known as the American rule). Section 440.2715 is silent as to attorney fees. Thus, under the literal wording of the statute's language, attorney fees are not included. Consistent with this approach, although not discussed by the Cady court, several Michigan Court of Appeals decisions have found that attorney fees as an element of costs or damages are authorized only when the language of a statute explicitly provides for them. E.g., Rzanca v. LDI, Inc., 531 N.W.2d 836, 838 (Mich.App.1995); see also 528 N.W.2d at 751 (exceptions to the prevailing doctrine that attorney fees are not recoverable are narrowly construed). Indeed, the Michigan legislature when authorizing attorney fees has expressly authorized them in numerous statutes. See, e.g., Mich.Comp.Laws Ann. §§ 600.2425(1), 600.2431(2), 600.2435 (West 1986).
 
 
 25
 Other provisions of the Uniform Commercial Code as adopted by Michigan counsel against construing incidental damages as implicitly including attorney fees. For example, Mich.Comp.Laws Ann. § 440.1106 (West 1994) addresses the administration and enforcement of remedies provided under the Code. Although that provision recognizes that generally remedies should be liberally administered to restore contracting parties to as good a position as if the contract had been performed, it specifically limits any other remedies: "neither consequential or special nor penal damages may be had except as specifically provided in this act or by other rule of law." Id. at § 440.1106(1). Moreover, Mich.Comp.Laws Ann. § 440.1103 (West 1994) explicitly recognizes that common law rules are not abrogated by the Code unless otherwise indicated. That provision states: "[u]nless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." Id. The comments to this section state further that "this section indicates the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are explicitly displaced by this Act." Id. at cmt. 1.
 
 
 26
 No other court in Michigan construing Michigan's Uniform Commercial Code has taken the liberal approach adopted by Cady. The only other court to authorize attorney fees under § 440.2715, Kelynack v. Yamaha Motor Corp., 394 N.W.2d 17 (Mich.App.1986), simply applied the holding in Cady and did not conduct any independent analysis of that court's holding. Id. at 21-22 (awarding attorney fees as consequential damages under § 440.2715).
 
 
 27
 More importantly, the Michigan Court of Appeals' decision in Cady conflicts with the decisions of the highest courts of other jurisdictions that have interpreted this same section of the Uniform Commercial Code and have found that attorney fees are not included as incidental damages. See, e.g., Jacobs v. Rosemount Dodge-Winnebago South, 310 N.W.2d 71, 79 (Minn.1981); Devore v. Bostrom, 632 P.2d 832, 835 (Utah 1981); Murray v. Holiday Rambler, Inc., 265 N.W.2d 513, 527-28 (Wisc.1978); cf. Jelen and Son, Inc. v. Bandimere, 801 P.2d 1182, 1185 (Colo.1990) (en banc) (attorney fees are not element of incidental damages under Colorado's version of UCC § 2-710); Hardwick v. Dravo Equip. Co., 569 P.2d 588, 592 (Ore.1977) (en banc) (attorney fees are not element of consequential damages under Oregon's version UCC § 2-715). Notably, in Jacobs, the Minnesota Supreme Court rejected the argument that incidental damages include attorney fees, but nevertheless granted fees based on the Minnesota Consumer Protection Act that expressly provides for attorney fees. 310 N.W.2d at 79 (quoting Minn.Stat. § 325.907 subd. 3a (1978) (authorizing " 'costs and disbursements, including costs of investigation and reasonable attorney's fee....' ") (repealed and recodified as Minn.Stat.Ann. § 8.31 subd. 3a (West Supp.1996)).[6]
 
 
 28
 On remand, the district judge is instructed to vacate the award of attorney fees. REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Peterson is a wholly-owned subsidiary of Tower
 
 
 [2]
 Although the parties and the court refer to this procedure as using a "special verdict" form, such was not the case. The jury actually returned a general verdict accompanied by the answers to interrogatories, which were part of the verdict forms. See Fed.R.Civ.P. 49(b); Portage II v. Bryant Petroleum Corp., 899 F.2d 1514, 1521 (6th Cir.1990)
 
 
 [3]
 The basis of this award can be gleaned from the jury instructions and testimony at trial. The district court instructed the jury to calculate seller's damages based on the outstanding balance due on the contract less the market value of the boat. Testimony at trial showed that $238,471 was unpaid on the vessel. The president of Peterson testified that the vessel had been offered for resale with an asking price of $150,000
 
 
 [4]
 In the district court, defendants requested the court to enter judgment for both the $88,471 for their breach of contract claim as well as the $238,471 awarded on the account stated claim. The district court declined this request. Defendants have not pursued this contention on appeal, and at oral argument before this court admitted that the request was made "half-heartedly" and was not based on any theory of law
 
 
 [5]
 Mich.Comp.Laws Ann. § 440.2714 (West 1994) in pertinent part authorizes "in a proper case" as buyer's damages "any incidental and consequential damages under the next section [§ 440.2715]."
 
 
 [6]
 The only highest state court to rule otherwise has been the recent decision of the Supreme Court of South Dakota in Colton v. Decker, 540 N.W.2d 172 (S.D.1995). Tellingly that court's entire analysis is as follows:
 Attorney Fees
 Colton incurred legal fees in South Dakota attempting to clear the title and retrieve the truck from Wyoming. The trial court allowed these fees as damages under SDCL 57A-2-715. As an element of damages, the attorney's fees were reasonable expenses incident to the impoundment for clouded title. Kelynack v. Yamaha Motor Corp., 152 Mich.App. 105, 394 N.W.2d 17 (1986); Cady v. Dick Loehr's, Inc., 100 Mich.App. 543, 299 N.W.2d 69 (1980).
 Id. at 178.