# STATE OF MICHIGAN

# COURT OF APPEALS

---

MIGUEL GOMEZ and M. G. FLOORING,

Plaintiffs-Appellants,

v

MERCEDES-BENZ USA, LLC and PRESTIGE
AUTOHAUS, INC., also known as MERCEDES-
BENZ OF ST. CLAIR SHORES,

Defendants-Appellees.

UNPUBLISHED
February 20, 2018

No. 335661
Macomb Circuit Court
LC No. 2015-004292-CZ

---

Before: TALBOT, C.J., and METER and TUKEL, JJ.

PER CURIAM.

This matter arises out of plaintiff's[1] purchase of a 2014 Mercedes-Benz Sprinter 2500 ("the vehicle") from defendant Prestige Autohaus, doing business as Mercedes-Benz of St. Clair Shores ("MBSCS"). Plaintiff sued for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and revocation of acceptance. The trial court granted summary disposition in favor of defendants on all of plaintiff's claims pursuant to MCR 2.116(C)(10). Plaintiff appeals as of right, and we affirm in part, reverse in part, and remand for further proceedings.

## I. BASIC FACTS

Plaintiff purchased the vehicle from MBSCS in September 2014. The vehicle was covered under a limited warranty, which "warrants to the original and each subsequent owner of a new Sprinter vehicle that any authorized Sprinter Dealer will make any necessary repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period." The warranty further states that "[a]ny authorized Sprinter dealer of the owner's choice will perform warranty repairs or replacements. The vehicle should be delivered to an authorized Sprinter dealer during normal service hours. A reasonable time should be allowed after taking the vehicle to an authorized Sprinter dealer for performance of the repair." The warranty also included the following disclaimer:

---

[1] Our use of the singular term, "plaintiff," will refer to plaintiff Miguel Gomez.

-1-

The limited warranties contained in this booklet are the only express warranties that the vehicle warrantor makes for your vehicle. These limited warranties give you specific legal rights. You may also have other rights that vary from state to state.

For example, you may have some implied warranties, depending on the state where your vehicle was sold or is registered.

These implied warranties are limited, to the extent allowed by law, to the time periods covered by the express written warranties contained in this booklet. If you use your vehicle primarily for business or commercial purposes, then these implied warranties do not apply and the vehicle warrantor completely disclaims them to the extent allowed by law. And the implied warranty of fitness for a particular purpose does not apply if your vehicle is used for racing, even if the vehicle is equipped for racing.

\* \* \*

NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR INDIRECT OR CONSEQUENTIAL DAMAGE SUCH AS DAMAGE OR INJURY TO PERSON OR PROPERTY OR LOSS OF REVENUE WHICH MIGHT BE PAID, INCURRED OR SUSTAINED BY REASON OF THE FAILURE OF ANY PART OR ASSEMBLY WHICH MAY BE REPAIRED OR REPLACED IN ACCORDANCE WITH THE TERMS OF THIS WARRANTY.

Following his purchase of the vehicle in September 2014, plaintiff presented the vehicle for repair and maintenance on five different occasions between April and October of 2015 to address what he described as a stalling and acceleration issue. It is undisputed that each time plaintiff presented the vehicle for service, he was not charged pursuant to the vehicle's limited warranty. Plaintiff testified that despite the repeated attempts to fix the stalling and acceleration issue, the problem continued to persist.

On October 30, 2015, plaintiff's counsel sent a correspondence to defendant Mercedes-Benz USA ("MBUSA"), which indicated that plaintiff rejected and revoked acceptance of the vehicle and rescinded the vehicle sales contract. The correspondence stated that plaintiff had "parked the vehicle and is not using it" and that "[h]e intends on covering the contract by either renting or purchasing an alternative vehicle." The correspondence further stated that plaintiff would be discontinuing the vehicle insurance coverage within five days and that he would discontinue monthly payments on the vehicle. On November 25, 2015, MBUSA responded and indicated that the vehicle did not qualify for a refund or replacement but that it would "continue to honor all of the terms of any remaining Mercedes-Benz Warranty." Five days later, plaintiff filed his complaint.

Plaintiff testified at his May 2016 deposition that he had been driving the vehicle "[e]very day right now," but in a subsequent October 2016 affidavit, he stated that he had "parked the subject van and [did] not use it."

The trial court later granted defendants' motion for summary disposition on all of plaintiff's counts.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). Defendants moved for summary disposition pursuant to MCR 2.116(C)(10). A motion under this subrule tests the factual sufficiency of the plaintiff's complaint. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a motion under MCR 2.116(C)(10), this Court must consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). The motion is properly granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999).

## III. DISCUSSION

Plaintiff argues that the trial court erred when it granted defendants' motion for summary disposition on each of his claims. For the reasons provided below, we hold that the trial court erred when it granted the motion with respect to the breach of express warranty claim but that it properly granted the motion with respect to the remaining claims.

## A. BREACH OF EXPRESS WARRANTY

Under Michigan law, a seller of goods can create an express warranty three different ways:

(a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model. [MCL 440.2313(1).]

"An express warranty may be created only between a seller and a buyer, and any such express warranty becomes a term of the contract itself." *Heritage Resources, Inc v Caterpillar Fin Servs Corp*, 284 Mich App 617, 634; 774 NW2d 332 (2009). Plaintiff bears "the burden of establishing that defendants breached the written limited warranty, i.e., that during the period of the warranty defendants were notified of a defect that they failed to repair." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 117; 839 NW2d 223 (2013).

Further, MCL 440.2719 states:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

"Where a manufacturer or dealer has limited its obligation under the sales agreement to repair or replace defective parts[,] the seller does not have an unlimited time to make the repairs, but rather must repair or replace the parts within a reasonable time." *Kelynack v Yamaha Motor Corp, USA*, 152 Mich App 105, 112; 394 NW2d 17 (1986). "Commendable efforts alone do not relieve a seller of his obligation to repair." *Id*. (quotation marks and citation omitted). "[T]he manufacturer's or dealer's failure to make repairs need not be willfully dilatory or even negligent for the damage to the buyer is the same whether the seller acts in good faith or in bad" because "[i]n either case, the buyer loses the substantial benefit of his bargain." *Id*. Further, what constitutes a reasonable time "depends on the nature and circumstances of the case." *Id*. at 113.

"A warranty fails of its essential purpose where unanticipated circumstances preclude the seller from providing the buyer with the remedy to which the parties agreed, in which event the buyer is entitled to seek remedies under the standard UCC warranty provisions." *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 314-315; 696 NW2d 49 (2005).

Here, the vehicle warranty information pertinently provides:

The New Vehicle Limited Warranty warrants to the original and each subsequent owner of a new Sprinter vehicle that any authorized Sprinter Dealer will make any necessary repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period.

\* \* \*

Any authorized Sprinter dealer of the owner's choice will perform warranty repairs or replacements. The vehicle should be delivered to an authorized

-4-

Sprinter dealer during normal service hours. A reasonable time should be allowed after taking the vehicle to an authorized Sprinter dealer for performance of the repair.

Plaintiff bears the burden of establishing "that during the period of the warranty defendants were notified of a defect that they failed to repair." *Gorman*, 302 Mich App at 117. The record indicates that plaintiff brought the vehicle to an authorized dealer for repairs on five separate occasions, between May and October of 2015, and that plaintiff has not presented the vehicle for service since then. It is undisputed that plaintiff was never charged for any repairs, and the record further indicates that each time plaintiff presented the vehicle for repair at an authorized dealer, defendants never refused warranty-covered service. Indeed, defendants have maintained throughout these proceedings that they will honor the warranty.

Plaintiff asserts that he experiences the same stalling issue for which he initially presented the vehicle for service, in spite of defendants having performed services free of charge on five different occasions. This Court has noted that "[c]ommendable efforts alone do not relieve a seller of his obligation to repair." *Kelynack*, 152 Mich App at 112. Moreover, notwithstanding defendants' ostensible good faith in performing the repairs, there appears to be an issue of fact as to whether plaintiff has lost the benefit of his bargain because his affidavit reveals that the vehicle was still defective even after defendants performed repair work.[2]

The trial court appears to have erroneously determined that there was no breach of warranty because "repairs were never refused by defendants." The court also determined that the warranty did not fail its essential purpose or deprive plaintiff of the benefit of his bargain because "[plaintiff] received the remedy to which the parties agree[d]—free repair." But this analysis misses the point. The purpose of the warranty is to *actually* fix or repair any defect in a reasonable amount of time, not merely to *attempt* to fix or repair. See *id.* Because of the numerous times plaintiff submitted the vehicle for repair over a five-month period and because the evidence, when viewed in a light most favorable to plaintiff, shows that the problem still exists, there is an issue of fact as to whether the warranty failed of its essential purpose, thereby denying plaintiff a substantial benefit of his bargain. Accordingly, we reverse the grant of summary disposition on this count.

## B. BREACH OF IMPLIED WARRANTIES

---

[2] Defendants' reliance on a technician's testimony, where the technician stated that on May 5, 2016, when he inspected the vehicle, "all systems operated as designed," is misplaced. Plaintiff explained that the problem was intermittent ("[s]ometimes it starts, sometimes it does not"). Thus, the fact that the problem was not apparent on that particular day does not establish that the vehicle was actually free from defects, especially when plaintiff stated in an affidavit that the problem manifested itself again after May 2016. Moreover, even the technician admitted that "[d]iagnosing and solving a stalling complaint is complex in nature because of the multiple variables."

Plaintiff alleged in his complaint that defendants breached the implied warranties of merchantability and fitness for a particular purpose. We agree that summary disposition was properly granted in favor of defendants on these claims.

Generally, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." MCL 440.2314(1). In other words, "[e]very contract for the sale of goods carries an implied warranty of merchantability unless such warranty is excluded or modified." *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 76; 719 NW2d 890 (2006). This Court has explained that the implied warranty of merchantability "requires that the goods sold be of average quality within the industry." *Computer Network*, 265 Mich App at 316. Notably, "[m]erchantable is not a synonym for perfect." *Id.* at 317 (quotation marks and citation omitted). Instead, "[t]he warranty of merchantability is that goods are of average quality in the industry." *Id.* (quotation marks and citation omitted).

"A warranty of fitness for a particular purpose requires that the goods sold be fit for the purpose for which they are intended; in order to take advantage of this type of warranty, the seller must know, at the time of sale, the particular purpose for which the goods are required and also that the buyer is relying on the seller to select or furnish suitable goods." *Id.* at 316 (quotation marks and citation omitted).

A seller, however, is allowed to disclaim these implied warranties. With respect to the warranty of merchantability, a seller can disclaim it as long as the language of the disclaimer mentions "merchantability" and is "conspicuous." MCL 440.2316(2). And to exclude or modify any implied warranty of fitness, "the exclusion must be by a writing and [be] conspicuous." *Id.*

MCL 440.1201(j) defines a "conspicuous" term as one

so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include any of the following:

* * *

(*ii*) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language."

Here, plaintiff wholly ignores the purchase agreement between plaintiff and MBSCS, which included an additional terms and conditions attachment that states:

Unless a separate written document showing the terms of any dealer warranty or service contract is furnished by the Dealer to the Purchaser, any warranty on any new vehicle or used vehicle still subject to Manufacturer's warranty is that made by the Manufacturer only. THE DEALER HEREBY DISCLAIMS, TO THE EXTENT PERMITTED UNDER APPLICABLE STATE LAW, ALL WARRANTIES EXPRESSED OR IMPLIED INCLUDING ANY IMPLIED

WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

Because the above disclaimer of warranty is written in all capital letters, distinct from the surrounding text, there is no question of fact that MBSCS's waiver of implied warranties was conspicuous to satisfy the statute's requirements. Indeed, plaintiff fails to address how this waiver is not effectual. Accordingly, the trial court here did not err when it granted summary disposition in favor of MBSCS on plaintiff's two claims related to breaches of the implied warranties of merchantability and fitness for a particular purpose because MBSCS had waived those warranties. We note that plaintiff's reliance on *Computer Network*, 265 Mich App 309, is misplaced because the Court in that case held that "summary disposition was appropriate for [the defendant dealer] because it properly disclaimed conspicuously and in writing any implied warranty of merchantability." *Id.* at 315-316.

With respect to the claims against MBUSA, the trial court determined that plaintiff's claims failed because there was no genuine issue of material fact that the vehicle was defective when it left MBUSA's possession. The trial court did not err. Recall that "[t]o establish a prima facie case of breach of implied warranty, a plaintiff must show that goods were defective when they left the possession of the manufacturer or seller." *Id.* at 316 (quotation marks and citation omitted). Here, the evidence shows that the vehicle was free of ascertainable defects when plaintiff took possession. Indeed, plaintiff testified that the problem first occurred in approximately May 2015,[3] which was eight months after he purchased the vehicle and after he had driven approximately 18,000 miles. With this evidence, plaintiff cannot prove that the vehicle had this stalling defect when he first received the vehicle, and his claims against MBUSA for breaches of implied warranties must fail.[4]

As a result, the trial court did not err when it granted summary disposition to defendants on these claims.


C.  REVOCATION OF ACCEPTANCE

---

[3] Specifically, plaintiff stated during his May 2016 deposition that the problem first occurred "[on] a sunny day, . . . I think it was in summertime because I bought the vehicle in October or something like that [it was September] and the first problem, it was like at this time last year." Plaintiff further stated that at the time of delivery, the vehicle "was working good."

[4] Additionally, we note that with respect to the implied warranty of fitness for a particular purpose, plaintiff also cannot prove the essential element that MBUSA knew of his alleged specific purpose of hauling carpet. See *Leavitt v Monaco Coach Corp*, 241 Mich App 288, 293; 616 NW2d 175 (2000) "[T]he seller must know, at the time of sale, the particular purpose for which the goods are required and also that the buyer is relying on the seller to select or furnish suitable goods." (quotation marks and citation omitted). Thus, summary disposition was warranted for this count on this basis as well.

MCL 440.2608 details how a buyer may revoke his acceptance of goods:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

      (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

      (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

"[F]or the purposes of revocation under MCL 440.2608, nonconformity is a failure of the goods sold to conform to legitimate expectations arising from the contract." *Davis*, 271 Mich App at 82. Moreover, the "buyer must show the nonconformity has a special devaluing effect on him and that the buyer's assessment of it is factually correct." *Colonial Dodge, Inc v Miller*, 420 Mich 452, 458; 362 NW2d 704 (1984).

Generally, if the buyer rejects the goods he is in possession of, he "is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them." MCL 440.2602(2)(b). And because a buyer who revokes his acceptance of goods "has the same rights and duties with regard to the goods involved as if he had rejected them" initially, MCL 440.2608(3), "[c]ontinued use of the goods is not an option," *Computer Network*, 265 Mich App at 323. As a result, once the buyer revokes his acceptance of the goods, "any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller." MCL 440.2602(2)(a).

Here, plaintiff's counsel sent correspondence to MBUSA on October 30, 2015, stating that he rejected and revoked acceptance of the vehicle and rescinded the vehicle sales contract. The correspondence stated that plaintiff had "parked the vehicle and is not using it" and that plaintiff intended to cover "the contract by either renting or purchasing an alternative vehicle." However, at his May 2016 deposition, plaintiff admitted that he had been driving the vehicle "[e]very day right now." And when asked how many miles were on the vehicle, plaintiff answered that there was "a little bit" over 35,000 miles. Thus, after he had purportedly revoked his acceptance, plaintiff had driven the vehicle approximately 7,000 miles.[5] Therefore, because

---

[5] The record shows that just two days before he revoked his acceptance, the vehicle had 28,304 miles on it.

there is no question of fact that plaintiff continued to use the vehicle for at least six or seven months after attempting to revoke his acceptance, his revocation was ineffective. See *Computer Network*, 265 Mich App at 324. Consequently, we affirm the trial court's grant of defendants' motion for summary disposition on this count.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No taxable costs, as no party prevailed in full. MCR 7.219.

/s/ Michael J. Talbot
/s/ Patrick M. Meter
/s/ Jonathan Tukel