ARMSTRONG ET AL., APPELLANTS, *v.* DIAMOND SHAMROCK CORP., APPELLEE.

(No. 44370—Decided October 12, 1982.)

Mr. *Michael L. Thal,* for appellants.
Mr. *Owen Heggs,* for appellee.

MARKUS, J. Plaintiffs, who are former employees of the defendant company, appeal from a judgment denying their claims for vacation pay, severance pay, and attorney fees. We conclude that the trial court's findings after a non-jury trial are supported by the record, so we affirm.

All of the plaintiffs had worked for defendant for several years and were employed by defendant for the first half of 1977. On April 25, 1977, defendant entered into an agreement to sell the division employing plaintiffs to Arco Polymers, Inc. (hereinafter "ARCO"), with the transfer effective on June 1, 1977. As part of the sales agreement, ARCO agreed to offer defendant's personnel employed in that division equivalent or more favorable employment. Additionally, ARCO agreed to provide the same personnel benefits afforded by defendant for any employees who transferred their employment to ARCO.

Defendant had an established written company policy for vacation time with pay based upon the employees' years of employment.[1] The April 25 sales agreement provided the following arrangements for employee vacation benefits:

"D. For all Transferred Employees, [defendant] shall pay for vacations taken prior to the date they become employees of [ARCO] or its subsidiary and [ARCO] or its subsidiary shall pay for vacations taken on and after such date."

At the time defendant made its agreement with ARCO, defendant gave notice of the sale to its employees. Plaintiffs then met with defendant's management representative to discuss their future employment. At that meeting, defendant's representative made statements

---

[1] "B. Vacations

"June 1 is the Qualifying Date for Vacation determination.

"a. If you have been employed less than one year on June 1, you will receive one day of vacation for each month of service to the maximum of two weeks (or ten working days). At least 15 days must be worked in a month for it to be counted toward vacation time.

"General Rules about Vacations

"Vacations may be taken at any time during the calendar year in which you have met the qualifications, subject to the scheduling of your Supervisor. Vacation preference will be granted on the basis of length of service. Employees who have been employed the longest will be given first choice.

"If a holiday occurs during your vacation period, you will be granted an additional day of vacation.

"When you terminate your employment, you will receive payment for any earned but unused vacation.

"Vacation periods will not be cumulative from one year to the next.

"b. You will be granted two weeks vacation with full pay if you have been employed in excess of ten months and less than five years.

"c. Three weeks vacation with full pay will be granted to employees who have been employed five years, but less than ten years.

"d. Employees who have been employed ten years, but less than twenty years, will be granted four weeks of vacation with full pay.

"e. Employees who have been employed twenty years but less than thirty-five years will be granted five weeks of vacation with full pay.

"f. Employees who have been employed thirty years or more will be granted six weeks of vacation with full pay."

that defendant would pay plaintiffs for their accrued but unused vacation, and that it was uncertain whether transferred employees would receive separation compensation.[2]

Defendant's management advised some of the plaintiffs that they could retain employment with defendant by a lateral transfer to another position if they preferred to stay with defendant. None of the plaintiffs was told he would be terminated from defendant's employ if he chose not to accept positions at ARCO. All of the plaintiffs accepted employment with ARCO as of June 1, 1977, and each of them received a substantial pay raise. Plaintiffs received all their previously accrued but unused paid vacation time from ARCO, pursuant to the sales agreement.

At trial, plaintiffs contended that they were entitled to additional vacation pay and severance pay from defendant, claiming breach of contract and promissory estoppel. Additionally, plaintiffs claimed attorney fees and legal expenses for defendant's willful refusal to pay these benefits. The trial court rendered judgment for defendant.

I

Three of plaintiffs' assigned errors concern their claim for additional vacation pay:

"I. The trial court erred in its findings as to the year that the plaintiffs would receive a cash payment for accrued but unused vacation.

"II. The trial court erred in finding that the plaintiffs received the accrued but unused vacation for the year 1977 to which they would have been entitled as

employees of Diamond Shamrock from ARCO.

"IV. The trial court erred in not granting plaintiffs' payment for vacation pay that accrued as of June 1, 1976 and was payable in 1977."

In his conclusions of law, the trial judge ruled that "[p]laintiffs incurred no loss of vacation benefits as a result of their voluntary transfer from [defendant] to ARCO." That conclusion is well supported by the record. In effect, plaintiffs have no "accrued but unused vacation," because they used all vacation accrued in defendant's employ after they transferred to ARCO's employ, pursuant to ARCO's contractual responsibility for defendant's vacation obligations to these employees. Indeed, they received greater compensation than the value of vacation time that was accrued but unused on the date they transferred employment, because they were paid their new higher salaries when they used that vacation time.

Although defendant's written vacation policy might well be interpreted differently (see fn. 1, *supra*), plaintiffs contend that the time in service for each employee on June 1 each year established the duration of that employee's paid vacation benefit for the *following* calendar year. Thus, plaintiffs who had been employed by defendant for five to ten years on June 1, 1976, contend they were entitled to three weeks paid vacation during calendar year 1977. Those employed by defendant for ten to twenty years on June 1, 1976, contend they were entitled to four weeks paid vacation during 1977.

---

[2] The Diamond Shamrock personnel policy in 1977 concerning separation compensation provided that:

"1. When separation from employment is due to incompetency or because of a permanent layoff due to lack of work, the employee will receive [one week's pay for each of the first twelve years of service] plus vacation compensation earned and unused at the time of separation.

"* * *

"3. Only a vacation accrual payment will be made when the termination of employment is at the employee's instigation; when an employee is discharged for cause; or when an employee retires, either voluntarily or at the Corporation's request."

Vacation benefits could not be carried forward to cumulate with later vacations; they had to be used in the calendar year applicable to the June 1 qualifying date or they were abandoned.

Plaintiffs did not choose to use all the vacation benefits for which they claim to have qualified on June 1, 1976, before they transferred to ARCO's employment on June 1, 1977. But they did use those vacation benefits in the remaining months of 1977. Presumably, they used the vacation benefits for which they claim to have qualified on June 1, 1977, some time during 1978. As ARCO had agreed in its purchase contract with defendant, ARCO treated plaintiffs as its own employees for the full time of their service with defendant and ARCO, in determining vacation benefits. Thus, plaintiffs lost no vacation benefits and no seniority benefits by reason of their transfer to ARCO.

Plaintiffs argue that their rights to additional duplicative vacation pay derive from the separation compensation provisions of the written company policy (see fn. 2, *supra*), or from the statements made by defendant's management representative prior to their transfer to ARCO's employment. Accepting plaintiffs' contentions that one or both of these sources created enforceable promises that defendant would pay those benefits on or after plaintiffs' separation date,[3] those promises have been fully performed.

Defendant unquestionably made a third-party beneficiary contract with ARCO, under which ARCO agreed to satisfy defendant's vacation benefit obligations to these creditor-beneficiary employees. Cf. *Visintine & Co.* v. *New*

York C & St. L RR. (1959), 169 Ohio St. 505 [9 O.O.2d 4]; *Chitlik* v. *Allstate Ins. Co.* (1973), 34 Ohio App. 2d 193 [63 O.O.2d 364]; *John E. Cooper Co.* v. *DeCapo Const., Inc.* (Sept. 10, 1981), Cuyahoga App. No. 42293, unreported.

Since plaintiffs impliedly assented to the substitution of ARCO for defendant to provide the promised vacation benefits, there may well have been a novation which eliminated defendant's obligation to perform. Cf. *Bacon* v. *Daniels* (1881), 37 Ohio St. 279; *Steed* v. *Baker Wood Preserving Co.* (1933), 15 Ohio Law Abs. 644; *Union Central Life Ins. Co.* v. *Hoyer* (1902), 66 Ohio St. 344; *General Electric Co.* v. *Lombardi* (D. Md. 1959), 173 F. Supp. 841. In an early related decision, this court approved a finding that an employee agreed to substitute a successor company for his original employer's obligations, when the employee continued with the successor after learning the terms applicable to his employment in the successor's acquisition contract. *Jarmusch* v. *Otis Iron & Steel Co.* (1901), 13 Ohio C.D. 122.

Whether plaintiffs are considered as creditor-beneficiaries who had rights against both defendant and ARCO, or parties to a novation who had rights against ARCO alone, their rights have been fully satisfied. There is no evidence in the record that anyone promised they would receive their accrued and unused vacations while employed by defendant *and would also receive equivalent benefits from ARCO* during their first seven months of employment by ARCO. There is nothing in the record to deny that they received three to five weeks' vacation

---

[3] The trial court found that the oral statements by defendant's management representative did not create enforceable promises because they were not supported by sufficient consideration. Since plaintiffs gave defendant no benefit and sustained no detriment in exchange for those promises, the trial court's ruling seems justified. Similarly, there

is no reason to conclude those promises were enforceable on a promissory estoppel theory, because there was no showing that plaintiffs were caused any detriment in reliance on the promises. However, we need not reach either of those issues since the promises were fulfilled.

during those first seven months with ARCO, solely because of ARCO's agreement in its contract with defendant that ·ARCO would satisfy defendant's vacation obligations for these employees.

The trial court properly ruled that plaintiffs' claims for additional vacation pay lack merit. Their first, second, and fourth assignments of error are overruled.

## II

Four of plaintiffs' assigned errors concern their claim for "separation compensation" beyond accrued vacation benefits:

"III. The trial court erred in not awarding vacation and separation pay as Diamond Shamrock, by its actions, induced the plaintiffs to accept employment with ARCO.

"V. The trial court erred in holding that the plaintiffs were not terminated by Diamond Shamrock.

"VI. The trial court erred in holding that the plaintiffs were not entitled to separation compensation.

"IX. The trial court erred in determining that plaintiffs were told by Diamond Shamrock management personnel that they would continue to be employed by Diamond Shamrock in the event they did not wish to accept employment with ARCO."

Under the defendant's written company policy, plaintiffs would be entitled to separation compensation beyond their unused vacation benefits only if their separation resulted from "a permanent layoff due to lack of work" (see fn. 2, supra).[4] No separation compensation beyond accrued vacation benefits is provided for employees "when the termination of employment is at the employee's instigation * * *." There was no evidence

that defendant's management representative or anyone else made any additional assurances or promises concerning separation compensation other than vacation benefits.

Plaintiffs claim they were terminated as part of a layoff due to lack of work. The trial court found as a fact that they voluntarily terminated their employment with defendant when they chose to accept employment with ARCO. That finding is supported in the record by substantial, credible evidence, so an appellate court should decline to reject or modify it. *State, ex rel. Squire,* v. *Cleveland* (1948), 150 Ohio St. 303 [35 O.O. 448]; *Feterle* v. *Huettner* (1971), 28 Ohio St. 2d 54 [57 O.O.2d 213]; *Bilovocki* v. *Marimberga* (1979), 62 Ohio App. 2d 169 [16 O.O.3d 369].

Some of the plaintiffs acknowledged that they were offered continuing employment with defendant at other locations. None of them claimed they were told they would be terminated, if they elected not to accept employment with ARCO. Defendant's management said that all the plaintiffs would have been continued as defendant's employees at some other locations, if they chose not to accept ARCO's offers. ARCO paid each plaintiff a higher salary than he earned as defendant's employee. From the total record, we conclude there was sufficient evidence to support the trial court's ruling that plaintiffs chose to transfer to ARCO, so no separation compensation was owed them at that time. Presumably, plaintiffs retain their rights to separation compensation in appropriate future circumstances, pursuant to ARCO's assumption of defendant's responsibilities for their employment benefits.

Plaintiffs rely on decisions from other

---

[4] When separation compensation beyond vacation benefits is owed, it amounts to one week's salary for each year of the first twelve years of service. It is reduced by the time notice of termination precedes the separation, but not below two weeks' salary for these plaintiffs.

jurisdictions with significantly different factual situations. *Chapin* v. *Fairchild Camera & Instrument Corp.* (1973), 31 Cal. App. 3d 192, 107 Cal. Rptr. 111; *Dahl* v. *Brunswick Corp.* (1976), 277 Md. 471, 356 A. 2d 221; *Willets* v. *Emhart Mfg. Co.* (1965), 152 Conn. 487, 208 A.2d 546; *Adams* v. *Jersey Central Power & Light Co.* (1956), 21 N.J. 8, 120 A.2d 737. In none of those cases did the transferring employees have the option of remaining with their original employer.

In *Chapin, Dahl* and *Adams,* there was no semblance of a novation by which the transferring employees accepted a substitution of the new employer's responsibility for the old employer's obligations. In *Chapin,* the court emphasized that the new employer had no obligations to provide termination or severance pay equivalent to the benefits promised by the old employer. We find none of those decisions persuasive here.

The record supports the trial court's ruling that plaintiffs were not entitled to separation compensation beyond vacation benefits. Plaintiffs' third, fifth, sixth, and ninth assignments of error are overruled.

### III

Plaintiffs' remaining assignments of error require only a brief discussion:

"VII. The trial court erred in allowing the deposition of Joseph Sanborn to be read into evidence.

"VIII. The trial court erred in finding that the plaintiffs failed to prove the allegations in the amended complaint by a preponderance of the evidence.

"X. The trial court erred in not awarding fees to the plaintiffs."

The disputed deposition was challenged on the sole ground that it was filed later than one day before trial. Civ. R. 32(A) permits a deposition to be filed at a later time when the trial court finds good cause for the delay. That decision will not be disturbed on appeal, absent a showing that the trial court abused its discretion in making such a determination. We cannot find any evidence of an abuse of discretion here, since the deposition was scheduled three days before trial and defense counsel represented professionally that multiple postponements of the trial date ultimately prevented the witness' previously anticipated testimony in court. The deposition was filed promptly after it was transcribed. Further, plaintiffs have failed to suggest how the deposition testimony of this witness prejudiced their position.

With regard to plaintiffs' claim that the trial court erroneously ruled they had failed to prove their case, we have already considered plaintiffs' related claims in the first two segments of this opinion. This court has authority to reverse or modify the trial court's judgment regarding the weight of the evidence only if we conclude that the trial court's findings or conclusions are contrary to the manifest weight of the evidence. From an examination of the complete record in this case, we do not so find.

Plaintiffs' claim for attorney fees would not be justified, even if they prevailed on their claims for additional contractual benefits. Cf. *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177 [75 O.O.2d 224]; *Miller* v. *International Mercantile Corp.* (Feb. 28, 1980), Cuyahoga App. No. 40339, unreported. Ordinarily, attorney fees are allowed as damages only where they are allowed by statute, court rule, or contract terms; or in cases involving the establishment or protection of a public fund, a public service, malicious conduct, or exemplary damages. None of those circumstances is present here.

Plaintiffs' seventh, eighth, and tenth assignments of error are overruled.

The trial court's judgment is affirmed.

*Judgment affirmed.*

PATTON, P.J., and PARRINO, J., concur.