20 F.3d 786
 Mary LAWSON and Matt Lawson, on behalf of themselves and all
persons similarly situated, Plaintiffs-Appellants,
v.
HOUSEHOLD BANK F.S.B., Defendant-Third/Party Plaintiff-Appellee,
v.
RESOLUTION TRUST CORPORATION, Third/Party Defendant-Appellee.
 No. 93-2220.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 9, 1993.
Decided April 6, 1994.
 
 Steven M. Levin, Levin & Perconti, Edward T. Joyce (argued), Arthur W. Aufmann, Eric K. Wein, Kubasiak, Cremieux & Fylstra, Chicago, IL, for Mary and Matt Lawson.
 Steven P. Handler, Christopher M. Murphy, McDermott, Will & Emery, Chicago, IL, for Household Bank F.S.B.
 Michael A. Weinberg, Novack & Macey, Chicago, IL, Dennis S. Klein, Kevin M. Crotty (argued), Hughes, Hubbard & Reed, Washington, DC, for Resolution Trust Corp.
 Before BAUER, FRIEDMAN,* and RIPPLE, Circuit Judges.
 FRIEDMAN, Circuit Judge.
 
 
 1
 In this suit, the owners of certificates of deposit (CD's) issued by a savings and loan association that shortly after issuance became insolvent, seek to recover from a bank that acquired the association's deposits and assumed its liabilities the amount of the interest rate on the CD's, that was higher than the interest rate the acquiring bank offered to the CD holders. In the purchase and acquisition agreement by which the bank acquired the deposits, the bank explicitly did not assume the association's obligations concerning the terms or rate of interest on the CD's. The district court rejected the CD owners' claim to this additional interest, and we affirm.
 
 
 2
 * A. In January 1991, the appellants Lawson acquired from Imperial Federal Savings Association (Imperial) five one-year CD's, each for $100,000 and bearing interest at 8.3 percent annually. On April 19, 1991, the Treasury Department declared Imperial insolvent and appointed the Resolution Trust Corporation (Resolution) as receiver. On the same day, Resolution entered into a purchase and assumption agreement with Household Bank F.S.B., under which Household Bank acquired specified assets and assumed specified liabilities of Imperial. In Section 2.1 of the agreement, Household Bank
 
 
 3
 expressly assumes ... (a) All Deposits ... provided that ... [Household Bank] is not assuming any agreement between ... [Imperial] and any depositor relating to such Deposits, including, without limitation, any agreement with respect to the term of or rate of interest on such Deposits
 
 Article 6.2 stated that Household Bank
 
 4
 shall pay interest on all Deposits assumed by it pursuant to Section 2.1 in accordance with the terms of each written agreement between ... [Imperial] and the depositors of ... [Imperial] to each such Deposit and honor all the terms and conditions of such agreements, for a period not less than fourteen (14) days commencing the day after Association Closing, ... after the expiration of the fourteenth (14) day, [Household Bank] ... shall pay interest on all time deposits of [Imperial] ... at a rate no less than the then current passbook savings deposit rate of interest paid by [Household Bank].
 
 
 5
 On the same date, Household Bank informed all of Imperial's depositors whose deposits it acquired (including the Lawsons) that the deposits had been transferred to it, that the depositors would receive interest on their deposits "at the rate established prior to their transfer, through May 3, 1991," and that effective May 4, 1991, the interest rate on one-year CD's would be 6.11 percent (as against the 8.3 percent the CD's originally carried). The notice explained that "[i]n order to remain financially sound, no bank can pay interest rates that are substantially higher than market levels. For this reason, Household Bank cannot offer the same rate on deposit accounts that was paid by the former Imperial Federal Savings Association." The notice informed the Lawsons that "you will have the opportunity to enter into a new deposit agreement, or 'ratify,' the continuation of your deposit accounts at Household Bank.... [y]ou may withdraw your funds without penalty until you enter into a new deposit agreement with Household Bank."
 
 
 6
 The Lawsons filed suit against Household Bank in an Illinois State court to recover the difference between the 8.3 percent interest the CD's originally carried, and the 6.11 percent Household Bank would pay. Household Bank filed a third-party complaint against Resolution, which had agreed to indemnify the bank. Resolution removed the case to the United States District Court for the Northern District of Illinois, and then moved to dismiss for failure to state a claim on which relief could be granted.
 
 
 7
 The district court granted the motion and dismissed the case. The court held that the Lawsons "are bound by the terms of the P & A Agreement between RTC and Household Bank," that the agreement "clearly demonstrates" that Resolution did not "pass along Imperial's contract interest rate liability to Household Bank," that under the agreement "Household Bank was only required to maintain Imperial's interest rate for the first 14 days after Imperial's insolvency and to give Imperial depositors notice of the change in their CDs' interest rate," and that "[s]ince Household Bank expressly did not assume Imperial's contractual interest liabilities beyond the initial 14 day period, it cannot be held liable to the Lawsons for such interest."
 
 II
 
 8
 Since the only parties to the CD's were Imperial and the Lawsons, any claims of the Lawsons against Household Bank relating to the CD's interest rate necessarily was based upon the agreement between Resolution and Household Bank, under which the latter acquired certain deposits and assumed certain liabilities of Imperial. Although the Lawsons may have been third-party beneficiaries of that agreement, it was the agreement, not the CD's, that defined any rights the Lawsons could have against Household Bank. See Payne v. Security Savings & Loan Association, F.A., 924 F.2d 109, 111-12 (7th Cir.1991).
 
 
 9
 Nothing in the agreement even suggests, let alone establishes, that Household Bank assumed Imperial's CD obligation to pay the interest the CD's originally carried. To the contrary, the agreement expressly stated that Household Bank "is not assuming any agreement between [Imperial] and any depositor ... with respect to the term of or rate of interest on such Deposits." Section 2.1(a). The agreement further provided that Household Bank would "pay interest on all Deposits assumed by it ... in accordance with the terms of each written agreement between [Imperial] and the depositors ... for a period not less than fourteen (14) days commencing the day after" Imperial became insolvent. Section 6.2. It is impossible to read these provisions as obligating Household Bank to continue to pay, for the full life of the CD's, the higher interest rate Imperial had agreed to pay.
 
 
 10
 The Lawsons argue, however, that because a CD is an indivisible contract, Household Bank could not acquire the deposit without also assuming the liability of the original interest rate, on the basis of which they made the deposit. As we have shown, however, Household Bank's obligation to pay the interest on the CD's stems not from the terms of the CD's (to which, we reiterate, Household Bank was not a party), but from the agreement between Household Bank and Resolution. The Lawsons offer no reason, and we know of none, why Household Bank could not limit the extent of Imperial's liabilities it assumed when it agreed with Resolution to acquire certain of Imperial's assets and assume certain of its liabilities. To deny the acquiring financial institution the right to impose such limitations, as Resolution points out, would make it more difficult for Resolution to use purchase and acquisition agreements to discharge its statutory deposit insurance obligations. Cf. Vernon v. Resolution Trust Corporation, 907 F.2d 1101, 1109 (11th Cir.1990).
 
 
 11
 The Court of Appeals for the First Circuit recently rejected the same contention in another case the Lawsons brought involving the same situation. Lawson v. Federal Deposit Insurance Corporation, 3 F.3d 11 (1st Cir.1993). There, the Lawsons had purchased five CD's from a Maine bank, which became insolvent. The Federal Deposit Insurance Corporation, as receiver of the bank, entered into a purchase and assumption agreement with Fleet Bank of Maine. That agreement, like the agreement in this case, "authorized Fleet Bank to reduce the interest rates paid on the transferred accounts after fourteen days, provided that the reduced rates did not go below the rate customarily paid by Fleet Bank on passbook savings accounts and provided that the depositors were given the opportunity to withdraw the funds without penalty." Id. at 12. The Lawsons sued both the Federal Deposit Insurance Corporation and Fleet Bank for the difference between the original interest rate on the CD's and the lower rate Fleet Bank offered. In affirming the district court's dismissal of the suit, the Court of Appeals stated
 
 
 12
 Turning finally to the claim against Fleet Bank, it did not assume any obligations with respect to the Lawsons' deposit accounts beyond those set forth in the purchase and assumption agreement. See Payne v. Security Savings & Loan Ass'n, 924 F.2d 109, 111 (7th Cir.1991). Thus, if the bank's conduct was consistent with the agreement, as the district court found, the Lawsons have no case. We agree with the district court.
 
 
 13
 Id. at 16.
 
 
 14
 We fully agree with that ruling.
 
 
 15
 Indeed, the Lawsons are better off financially as a result of Household Bank's action under the purchase and assumption agreement than they would have been if Resolution itself had liquidated Imperial instead of entering into the agreement. If Resolution had done so, Resolution's liability to the Lawsons would have been the amount of the deposits, plus interest at the stated rate, to the date of insolvency. Resolution's statutory obligation is to provide insurance for the "deposits" in a failed financial institution. A deposit is defined, for purposes of the statute, as "the balance of principal and interest unconditionally credited to the deposit account as of the date of default of the insured depository institution." 12 C.F.R. Sec. 330.3(i)(1) (1993).
 
 
 16
 As a result of Resolution's entering into the purchase and assumption agreement--which the statute authorized, 12 U.S.C. 1821(f)(1)--the Lawsons received the higher interest rate for fourteen days longer than they would have received it if Resolution itself had liquidated Imperial and satisfied its insurance obligation by itself paying the depositors.
 
 
 17
 The judgment of the district court is affirmed.
 
 
 
 *
 Daniel M. Friedman, Circuit Judge for the Federal Circuit, sitting by designation