VIDIMOS, INC., Plaintiff–Appellant,

v.

LASER LAB LTD., et al., Defendants,

and

Wysong Laser Co., Inc., and Wysong & Miles Co., Defendants–Appellees.

No. 95–3676.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1996.

Decided Oct. 24, 1996.

J.B. Smith, Randall J. Nye (argued), Beckman, Kelly & Smith, Hammond, IN, for Plaintiff–Appellant.

C. Joseph Yast (argued), Northfield, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

POSNER, Chief Judge.

The plaintiff in this diversity suit, Vidimos, Inc., claims to be a third-party beneficiary of a contract between Laser Lab Ltd. and Wysong Laser Co., a contract that includes a guarantee of Wysong's undertakings by its parent, Wysong & Miles Co. (We shall refer to the two companies collectively as "Wysong.") The district court rejected the claim, granting summary judgment for Wysong. Laser Lab and its affiliates are defunct, but remain defendants in the district court. The court entered final judgment in favor of Wysong under Fed.R.Civ. P. 54(b), thus enabling Vidimos to appeal without having to wait for the formal disposition of its claims against the other defendants. The appeal raises interesting questions concerning both

the doctrine of third party beneficiaries and—because Vidimos wishes to add theories of contractual liability not mentioned in its complaint—the limits of notice pleading under the federal civil rules.

In November of 1988 Vidimos, a metal fabricator in northern Indiana, bought for about $400,000 a laser metal-cutting machine from Laser Lab, an Australian manufacturer. The contract of sale included a number of warranties of the performance of the machine. The machine was installed in Vidimos's plant in May of the following year, and from the outset (if, as we are obliged to do, we view the facts as favorably to Vidimos as the record permits) the machine did not work properly. Laser Lab tried to fix it and when these efforts failed replaced it with a new machine, but the new machine did not work either. Finally, in March of 1991, it wrote Vidimos that, lacking the resources in the United States to service its machines properly, it had "signed an agreement with an old established American company, Wysong & Miles Co.," which henceforth would be responsible for distributing, installing, and doing warranty service for Laser Lab's machines in the United States and would "also be responsible for any outstanding warranty commitments to existing customers." Wysong Laser wrote Vidimos confirming a further one-year extension of Laser Lab's warranty and "Wysong Laser's commitment to Vidimos Inc." Vidimos then permitted employees of Wysong Laser to work on its machine and did not object when Laser Lab turned over its U.S. operations to Wysong Laser and closed its U.S. facilities. Employees of Wysong Laser—who were Laser Lab's former U.S. service personnel flying a new flag—kept trying to fix Vidimos's machine, but without success. Not until August 1992, more than three years after the first machine had been installed, was the replacement machine finally fixed (by another company—not Wysong or Laser Lab) and performing as warranted. Vidimos claims to have lost more than a million dollars in profits as a result of the breach of Laser Lab's warranty. Laser Lab is insolvent, so Vidimos seeks to recover its loss from Wysong under the latter's contract with Laser Lab.

The contract, which provides that Michigan law shall govern any legal disputes arising out of it, appoints Wysong Laser the exclusive distributor in North America of laser machine tools manufactured by Laser Lab. Along with the standard undertakings of an exclusive distributor, Wysong Laser "assumes and agrees to perform [Laser Lab's] service obligations under [Laser Lab's] express repair or replace warranties" on machines previously sold in North America, including the machine sold to Vidimos. Laser Lab in turn warrants that the parts it furnishes Wysong Laser will be free from defects. But Wysong Laser's remedy for breach of this warranty (which is expressly in lieu of any other warranties) is limited to the cost of repair or replacement of the defective parts and expressly excludes consequential damages. The contract is signed by Wysong & Miles as well as by Wysong Laser, with the accompanying explanation that one of the purposes for Wysong & Miles's being a signatory is "to guarantee the performance of the obligations of [Wysong Laser] under this Agreement."

The rule allowing someone who is not a party to a contract to sue under it as a "beneficiary" is a relative novelty in the common law (the analogous right of a trust's beneficiary is equitable in its origin), and at first glance invites practical as well as conceptual objections. Contracts often benefit persons besides the signatories, and a breach harms them. To allow all these injured beneficiaries to sue would expose contract promisors to enormous potential liabilities, even for involuntary breaches (which many breaches of contract are), and would be inconsistent with the limitations that tort law imposes on remote liability. See *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896 (1928) (Cardozo, C.J.); *Edwards v. Honeywell, Inc.*, 50 F.3d 484 (7th Cir.1995). And how can there be a meeting of the minds between a party and a nonparty? But these puzzles dissipate when attention is shifted to the intentions of the contracting parties. The parties may for their own purposes want to confer a power of enforcing their contract upon a third party. If they make this intention adequately clear in the contract, the concept of freedom of contract becomes a

compelling ground for allowing the third party to enforce the contract. The standard clause making a contract binding upon and enforceable by the parties' successors and assigns does just this—vests enforcement power in third parties, often unidentified and unidentifiable at the time the contract is signed (*not* the case here), "parties" who are not parties to the contract in the normal sense because they did not agree to anything, yet who have the rights of parties. E.g., *Commercial Standard Ins. Co. v. Bryce St. Apartments, Ltd.,* 703 F.2d 904, 907 (5th Cir.1983); *International Paper Co. v. Whitson,* 571 F.2d 1133, 1138 (10th Cir.1977).

If the facts are as Vidimos believes, the parties to the contract appointing Wysong Laser the exclusive North American distributor of Laser Lab's machines may well have intended Vidimos to be empowered to enforce the contract, specifically the provision in which Wysong Laser assumed Laser Lab's existing warranty obligations. Laser Lab might want Vidimos to have this power in order to reduce the likelihood that Vidimos would sue it for losses resulting from a breach of warranty. Both Laser Lab and Wysong Laser might want Vidimos to have the power in order to dissuade Vidimos from taking steps to block the transfer of Laser Lab's North American operations to Wysong Laser. The transfer disabled Laser Lab from honoring its warranty obligations, and Vidimos conceivably might have treated the transfer as an anticipatory breach of contract, Mich. Comp. L. § 440.2610 [UCC § 2–610]; *Paul v. Bogle,* 193 Mich.App. 479, 484 N.W.2d 728, 735–36 (1992); 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.21, p. 479 (1990), although an alternative and more plausible interpretation is that the transfer was a permissible delegation of contractual performance. *Restatement (Second) of Contracts* § 318 (1981).

■ Of course the fact that the parties to the distribution agreement might have had motives for conferring party status on Vidimos is not proof that they did so. We must look for clues to their realized intentions in the contract itself. *Downriver Internists v. Harris Corp.,* 929 F.2d 1147, 1150 (6th Cir. 1991) (applying Michigan law) ("The contract must indicate with objective clarity that this benefit was intended"); *Lawson v. Household Bank F.S.B.,* 20 F.3d 786, 788 (7th Cir.1994). The express assumption of existing warranty obligations is such a clue, which together with the incentives that we have mentioned creates a genuine issue of material fact concerning Vidimos's right to sue as a third party beneficiary. See *Crumady v. "Joachim Hendrik Fisser,"* 358 U.S. 423, 428, 79 S.Ct. 445, 448, 3 L.Ed.2d 413 (1959); *In re Merritt Logan, Inc.,* 901 F.2d 349, 369 (3d Cir.1990); *Armstrong v. Diamond Shamrock Corp.,* 7 Ohio App.3d 296, 455 N.E.2d 702, 705 (1982).

■ There is no merit to Wysong's contention that under Michigan law a third party cannot be a third party beneficiary unless the primary purpose of the contract was to benefit him. See Mich. Comp. L. § 600.1405(1). The primary purpose of most contracts is to benefit the signatories. If the parties intend to benefit a third party as well, there is no reason we can think of (and Wysong suggests none) to thwart their intention by reference to the hierarchy of their intentions. Granted, the fact that a third party would be benefited by performance of the contract is not enough to give him the status of a third party beneficiary. *Greenlees v. Owen Ames Kimball Co.,* 340 Mich. 670, 66 N.W.2d 227, 229 (1954); *Alcona Community Schools v. State,* 216 Mich.App. 202, 549 N.W.2d 356, 357–58 (1996) (per curiam). We explained why earlier. But this is different from insisting that an *intended* third party beneficiary—as distinct from an incidental, that is, an unintended, beneficiary—be the *primary* intended beneficiary of the contract. Summary judgment was granted prematurely.

■ But this cannot be the end of our analysis. Wysong argues that the contract precludes the recovery of consequential damages, and as those are the only damages that Vidimos seeks there is little point in prolonging this litigation if Wysong is right. Under Michigan law, as generally, consequential damages are available in breach of warranty suits if the standard criterion for an award of such damages—foreseeability—is satisfied. Mich. Comp.L. §§ 440.2714(3), 2715(2)(a)

[UCC §§ 2–714(3), 2–715(2)(a) ]; *Taylor & Gaskin, Inc. v. Chris–Craft Industries,* 732 F.2d 1273, 1278 (6th Cir.1984) (applying Michigan law). But the parties to a contract can, within broad limits unlikely to be exceeded in the kind of contract that we have before us, exclude such relief. Mich. Comp. L. § 440.2719(3) [UCC § 2–719(3) ]; *Kelynack v. Yamaha Motor Corp.,* 152 Mich.App. 105, 394 N.W.2d 17, 21 (1986); *Ralph Shrader, Inc. v. Diamond Int'l Corp.,* 833 F.2d 1210, 1212 (6th Cir.1987) (applying Michigan law). They clearly did this with respect to a suit by Wysong for breach of warranty by Laser Lab, and Wysong insists that the third party beneficiary's rights cannot rise any higher than those of the express promisee. Wysong would be right if Vidimos were standing in Wysong Laser's shoes and suing on the parts warranty running from Laser Lab to Wysong Laser. It is not. It is suing to enforce the assumption by Wysong Laser of Laser Lab's existing warranty obligations. Neither the original contract between Laser Lab and Vidimos, which imposed those obligations, nor the contract whereby Wysong assumed those obligations excludes consequential damages.

The second contract does require Laser Lab, as a precondition to seeking indemnification from Wysong, to notify Wysong that Laser Lab is being sued under the warranty obligations. The purpose of the requirement is to enable Wysong to assert any defenses that Laser Lab might have against the suit (unless these are defenses personal to Laser Lab). Vidimos sued both Wysong and Laser Lab, and that was notice enough to Wysong to enable it to assert any defenses that Laser Lab might have.

 We must not forget that Wysong & Miles, Wysong Laser's parent, is another defendant, on the strength of its guarantee of its subsidiary's obligations under the contract with Laser Lab. Wysong & Miles argues that even if Vidimos is a third party beneficiary of the rest of the contract, it is not a third party beneficiary of the guarantee. A guarantee is like liability insurance (both are forms of indemnity), and, except in direct-action states, of which Michigan is not one, Mich. Comp. L. § 500.3030, a contract of liability insurance is not enforceable by the victim of the insured's tort under a third party beneficiary theory. *Allstate Ins. Co. v. Keillor,* 190 Mich.App. 499, 476 N.W.2d 453, 454–55 (1991), rev'd on other grounds, 442 Mich. 56, 499 N.W.2d 743 (1993); *Itrich v. Huron Cement Division,* 670 F.Supp. 199, 204–05 (E.D.Mich.1987) (applying Michigan law). But the reason, we conjecture, is to protect insurance companies against the antagonism or "deep-pocket psychology" of jurors, Mich. Comp. L. § 500.3030 (forbidding mention of insured status of defendant); *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 682 (7th Cir.1992); *Lieberthal v. Glens Falls Indemnity Co.,* 316 Mich. 37, 24 N.W.2d 547, 549 (1946), rather than anything to do with the theory of third party beneficiaries. For in other settings (and this is one of them) the Michigan courts permit third party beneficiaries to sue to enforce guarantees. *Aiton v. Slater,* 298 Mich. 469, 299 N.W. 149, 154 (1941); *Camelot Excavating Co. v. St. Paul Fire & Marine Ins. Co.,* 410 Mich. 118, 301 N.W.2d 275, 281 (1981); *Director of Bureau of Workers' Disability Compensation v. Durant Enterprises, Inc.,* 195 Mich.App. 626, 491 N.W.2d 584 (1992) (per curiam); see also *Donald v. Liberty Mutual Ins. Co.,* 18 F.3d 474, 480–81 (7th Cir.1994) (Indiana law). Wysong & Miles guaranteed "the performance of the obligations of [Wysong Laser] under this Agreement," and one of those obligations is the obligation of Laser Lab to Vidimos that Wysong Laser assumed.

The complaint alleges breach of contract and of warranty. Eighteen months after the complaint was filed, however, Vidimos, in response to Wysong's motion for summary judgment and without moving to amend its complaint, argued for the first time that Wysong was liable to it under additional theories—assumed duty and promissory estoppel. The magistrate judge refused to consider the additional theories on the twin grounds that "Vidimos has [1] not presented any justification for the delay in raising these claims [2] nor shown that the defendants should have been on notice of such claims." The first ground is wrong; the second was wrongly applied.

 The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories. *La Porte County Republican Central Comm. v. Board of Commissioners,* 43 F.3d 1126, 1129 (7th Cir.1994); *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992); *Rohler v. TRW, Inc.,* 576 F.2d 1260, 1264 (7th Cir.1978). With immaterial exceptions, see, for example, *Samuels v. Wilder,* 871 F.2d 1346, 1350 (7th Cir.1989) (proof of fraud), the rules require only the pleading of a claim, Fed.R.Civ.P. 8(a), here that Wysong broke a promise to fix Vidimos's machine, causing a loss of profits. So there is no burden on the plaintiff to justify its altering its original theory. Which is not to say that such an alteration is always permissible. If the complaint explicitly or implicitly disclaims certain legal characterizations of the claim, an effort to retract the disclaimer may come as a surprise to the defendant and make it more costly or difficult for him to defend, or may simply protract the lawsuit inexcusably. Or by tacit agreement of the parties a possible interpretation of the complaint may simply not be pursued—the case may develop along quite other lines—and an effort to redirect the case may cause unreasonable delay even if there is no surprise to the defendant. In either of these cases the district court can and should hold the plaintiff to his original theory. E.g., *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1428–30 (7th Cir.1993); *Johnson v. Methodist Medical Center,* 10 F.3d 1300, 1304 (7th Cir. 1993); *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995); *Alley v. Resolution Trust Corp.,* 984 F.2d 1201, 1208 (D.C.Cir.1993); *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090–91 (10th Cir.1991).

 This is not such a case, at least with respect to promissory estoppel. To begin with, there was no surprise. Unlike the complaint in *Evans v. Fluor Distribution Cos.,* 799 F.2d 364, 367 (7th Cir.1986), Vidimos's complaint fairly breathes promissory estoppel, cf. *First National Bank v. Logan Mfg. Co.,* 577 N.E.2d 949, 954 (Ind.1991), although it does not mention the term—and did not have to. It alleges that Vidimos relied on Wysong's promise to honor Laser Lab's existing warranty obligations by expending resources in cooperating with Wysong's futile efforts at repair and by forgoing (more precisely, deferring) legal remedies. These allegations laid the foundation for a claim of promissory estoppel. Wysong should not have been surprised to find the claim asserted explicitly in an effort to avoid, by basing liability on a promise expressly addressed to Vidimos, the problems with the third party beneficiary claim that were urged by Wysong as grounds for summary judgment. If Wysong wished to minimize uncertainty concerning the scope of Vidimos's claims, it could have served contention interrogatories.

We are doubtful, though, that Vidimos should be permitted to pursue its "assumed duty" theory. The only cases it cites in support of the theory are Indiana cases; so it must be (in fact clearly is, despite Vidimos's coyness, *Tincher v. Greencastle Federal Savings Bank,* 580 N.E.2d 268, 273 (Ind.App. 1991); *H.R. Moch Co. v. Rensselaer Water Co., supra,* 159 N.E. at 898–99; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, pp. 378–79 (5th ed.1984)) a tort theory; for disputes arising from the contract are governed by Michigan law, whereas Indiana law would undoubtedly govern any tort claim arising out of the failure of the machine to perform as warranted. Nothing in the complaint hints at the presence of any tort claims; nor is a tort theory of "assumed duty" the sort of thing every defendant in a contract case is expecting to have thrown at him. The danger of surprise, and of steering the lawsuit into deep and troubled waters, cannot be reckoned trivial. In its reply brief Vidimos argues that the "assumed duty" claim is contractual as well as tortious, because Wysong assumed a duty to use due care to repair the machine by assuming Laser Lab's existing warranty obligations. We cannot see what this theory adds to the third party beneficiary and promissory estoppel theories; and we deplore the mindless proliferation of legal theories by trial lawyers. But insistence that a legal theory be mentioned in the complaint is not, under a regime of notice pleading, a proper method of case management, so we shall leave it to the district court to decide in the first instance whether Vidimos should be permitted to pursue its "assumed duty" theory

of Wysong's liability or barred from doing so on the ground of surprise or delay and consequent prejudice either to the defendants or to judicial economy, and also whether there is any basis for a claim of promissory estoppel against Wysong & Miles as well as against Wysong Laser.

REVERSED AND REMANDED.