**Alfred L. STONE, Plaintiff–Appellant,**

v.

**CITY OF INDIANAPOLIS PUBLIC UTILITIES DIVISION, d/b/a Citizens Gas & Coke Utility, et al., Defendants–Appellees.**

No. 01–3210.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 18, 2001.[*]

Decided Feb. 19, 2002.

---

**2.** Although Gray also asserts a retaliation claim, this argument is without merit and does not warrant discussion.

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is

submitted on the briefs and the record. *See*  Fed. R.App. P. 34(a)(2).

Before POSNER, MANION, and ROVNER, Circuit Judges.

## ORDER

Alfred Stone filed suit against the City of Indianapolis, Indiana, its mayor, and several city-owned utilities and their employees, alleging employment discrimination, various civil rights violations, and assorted claims under Indiana law. The district court dismissed the City and the mayor, and later granted the remaining defendants' summary-judgment motion in its entirety. We address in this order the merits of each of Stone's claims on appeal, and, in a separate published opinion issued today, we clarify the proper standard for summary judgment on retaliatory-discharge claims.

Stone, an African American who was then 47 years old, was hired as a service mechanic by defendant Citizens Mechanical Services, LLC ("CMS")[1] in September 1996. During his tenure Stone was employed solely by CMS and not any affiliate or parent company. After applying for the position, Stone received a copy of the governing collective bargaining agreement ("CBA") which provides that all new employees are probationary during their first year, and can be discharged with or without cause during that period.

As a service mechanic Stone was responsible for installing and maintaining water heaters and boilers, and installing gas lines. After about six months Stone began

---

1. CMS, commonly known as the Service and Rental Center, is a subsidiary of Citizens By-Products Coal Company, which in turn is a subsidiary of Citizens Gas & Coke Utility. Citizens Gas itself is a d/b/a of the City of Indianapolis Public Utilities Division. Stone named each company as a defendant.

accumulating reprimands from supervisor David Martin for job lapses, including miscalculating customer bills, neglecting to timely report vandalism to his company vehicle, failing to complete jobs in a timely or accurate manner, and leaving job-related paperwork undone.

Meanwhile, within two days of starting work as a service mechanic, Stone began applying for other positions within CMS and Citizens Gas. Stone first applied to CMS for a Field Sales Representative position. He was not interviewed, and was later informed that CMS had decided not to fill the position. In December 1996 Stone applied to become a residential sales representative with Citizens Gas. This position required a four-year college degree, preferably in marketing or business administration, and experience in developing marketing and sales programs. Citizens Gas concluded that Stone lacked the requisite education and experience and thus did not interview him. In January 1997 Stone informed CMS's president that the company was violating Indiana law by performing plumbing work without proper licensing or a "contractor of record" to supervise. The union, at the company's urging, directed the four service mechanics (including Stone) to vote one of themselves as "contractor of record." This title carried with it an extra $1.50 per hour in salary. The mechanics *unanimously* selected Daniel Canter, the most senior of the four, to serve in this role. Finally, in June 1997 Stone vied to become CMS's general manager, even though he lacked the required bachelor's degree in accounting, finance, or business. Stone was not interviewed for this position.

Stone also reportedly sustained a number of injuries during his time at CMS. Several times he missed work due to what he characterized as work-related back problems, but in each instance doctors at

CMS's medical provider, St. Vincent Hospital, examined Stone and determined that his back pain was neither work-related nor severe enough to require absence from work. Stone was, however, awarded workers' compensation for some of these injury claims. After one injury in August 1997, Stone disputed the doctor's evaluation and refused to sign the form authorizing his return to work. For several days Stone performed light-duty work, until another doctor concluded during a follow-up appointment that Stone could work without limitations. Upon returning to his regular duties, Stone told his supervisors that he was going to file a workers' compensation claim. On August 24, 1997, Stone submitted a memorandum requesting leave under the Family and Medical Leave Act (FMLA) but did not specify the basis for his leave.

Two days after receiving the FMLA request, CMS announced that it was firing Stone for poor performance. Because Stone had been at CMS for less than a year and was still a probationary employee, CMS was at liberty under the CBA to terminate his employment either with or without cause. Stone, however, had previously filed charges of discrimination with the Indiana Civil Rights Commission and the EEOC in March 1997. One charge, against Citizens Gas, alleged sex, race and age discrimination resulting from Citizens Gas' failure to hire him. The second charge, against CMS, alleged that he was not selected for the positions of Field Sales Representative and "contractor of record" due to his race. Then, in August 1997, Stone filed a third charge against CMS, now claiming that he was fired in retaliation for filing his prior charges and in violation of the Americans with Disabilities Act ("ADA"). After receiving right-to-sue letters from the EEOC, Stone filed two complaints in the Southern District of Indiana, the one giving rise to this appeal

in 1998 and the second in 1999. Both cases, which were assigned to different judges, raise overlapping claims centered on Stone's lack of success in changing jobs within the Citizens Gas family of companies and, ultimately, his termination from CMS. The second case reached the summary judgment stage first, and we affirmed the ruling for the defendants more than a year ago. *See Stone v. City of Indianapolis,* No. 00–2356, 2000 WL 1597785 (7th Cir. Oct.23, 2000) (unpublished). Five months later, the district court finally entered summary judgment against Stone in the earlier action.

■ Stone attributes his failure to secure a different job and his firing to race and age discrimination. The district court, however, held that Stone had failed to present a prima facie case of discrimination and, in any event, could not demonstrate pretext in the reasons given for the defendants' employment actions. We agree. The district court exhaustively analyzed Stone's claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.;* Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.;* and 42 U.S.C. § 1981 and concluded that Stone had no evidence to dispute CMS's explanation that he was fired because of his "inability to adequately perform the duties and responsibilities of the service mechanic position." The district court further held that even if Stone could satisfy his prima facie burden, he failed to show on the same facts that the defendants' legitimate, non-discriminatory reasons for firing him and not hiring him for other positions were a pretext for age or race discrimination. *See Fortier v.*

*Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1113 (7th Cir.1998) (noting overlap between factual inquiry relevant to "legitimate expectations" prong of the prima facie case and proof of pretext).

■ To show pretext, Stone must demonstrate that the defendants' proffered reasons were lies or completely lacking in factual basis. *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir.2000). In the termination context this means that even if the reasons CMS gave for firing Stone were mistaken, ill considered or foolish, Stone cannot demonstrate pretext so long as CMS honestly believed those reasons. *Id.* CMS fired Stone for poor work performance, his failure to timely and properly complete work assignments, and his bad attitude. Stone has not proffered any evidence indicating that this explanation was pretextual or unworthy of credence. *See Kaniff v. Allstate Ins. Co.,* 121 F.3d 258, 263 (7th Cir.1997).

■ In the failure-to-hire context, a desire to hire the more experienced or better qualified applicant is a non-discriminatory, legitimate, and common reason on which to base a hiring decision. *See, e.g., Gorence v. Eagle Food Centers, Inc.,* 242 F.3d 759, 766 (7th Cir.2001); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 458–59 (7th Cir. 1999); *see also Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 515–16 (7th Cir. 1996). CMS and Citizens Gas explained that their decisions not to hire Stone for the various positions were based on his lack of necessary experience and educational qualifications, and on the availability of other, more-qualified candidates, Stone failed to demonstrate a triable issue of fact concerning these explanations.[2]

---

**2.** Stone contends that in evaluating his discrimination claims the district court erred in refusing to give conclusive effect to the finding of his state unemployment compensation proceeding that he was discharged by CMS without cause. Stone raised an identical argument in his previous appeal, *see Stone,* 2000 WL 1597785, at *5, which we rejected and will not address anew here.

Stone also claimed that his firing was retaliatory; he argues that the district court mischaracterized his complaint by casting its retaliation claim as one arising from the EEOC charges instead of his real allegation that the defendants retaliated against him because he announced his plan to file a workers' compensation claim for his back injury and also requested leave under the FMLA. After reviewing the complaint we agree with Stone insofar as he contends that he alleged retaliation arising from his announced intention to pursue a workers' compensation claim.[3] We think it is doubtful, however, that Stone properly raised in the district court a retaliation claim based on his request for FMLA leave. As the defendants note, Stone failed to mention the FMLA in his original or amended complaints, and so the district court properly declined to address the issue on summary judgment. *Vidimos v. Laser Lab Ltd.* 99 F.3d 217, 222 (7th Cir.1996); *Evans v. Fluor Distrib. Cos.,* 799 F.2d 364, 367 (7th Cir.1986). And of course Stone cannot raise for the first time on appeal a claim that was not properly raised below. *Moulton v. Vigo County,* 150 F.3d 801, 803 (7th Cir.1998).

■ Regardless, even if Stone did properly present the district court with both of his retaliation claims, the answer to each is the same: Stone offered no direct evidence of retaliation and did not satisfy his prima facie burden under the *McDonnell–Douglas* framework. As for direct evidence, Stone relied exclusively on the fact that he was fired just two days after requesting FMLA leave and a few weeks after submitting a workers' compensation claim.

But mere temporal proximity is rarely sufficient to establish the causal link required for direct evidence of retaliation, *see Stone v. City of Indianapolis,* No. 01–3210, slip op. at 5, —— F.3d ——, —— (7th Cir. 2002), and it is specifically insufficient in this case. Moreover, to survive summary judgment under the *McDonnell–Douglas* framework Stone bore the burden at all times of showing that he was performing his job satisfactorily and after lodging a complaint about discrimination, only he, and not any other similarly situated employee who did not complain, was subjected to an adverse employment action. Stone failed to establish a prima facie case of retaliation because there he failed to offer any evidence that he was meeting CMS's legitimate job expectations. Thus summary judgment on the retaliatory discharge claims was proper.

■ Stone also included within his complaint a claim under 42 U.S.C. § 1983 that the defendants, by not promoting him to "contractor of record," deprived him of a property interest in his plumber's license and the extra pay to which he was entitled in that position. His argument that this claim should have survived summary judgment is frivolous. Whatever property interest Stone has in his plumber's license was not abrogated by CMS's decision not to promote him and ultimately to fire him. He still had his license; he simply could not use it as an employee of CMS. Nor can he claim that he held a property interest in the extra salary arising from the role of "contractor of record." He and three other mechanics unanimously decided to give

3. The defendants assert for the first time in their brief that Stone's retaliation claims are barred by res judicata because they were rejected in Stone's earlier appeal. The defendants did not raise the point below, so it is waived. Moreover, we do not understand how two, nearly identical suits proceeded along on parallel tracks without consolidation, or why the defendants, represented by the same counsel in both cases, never raised a preclusion defense in the district court during the five months between our October 2000 order in Stone's first appeal, and the district court's March 2001 order in the present case.

the position to the most senior mechanic on the staff. Stone did not have a property interest in that position, and CMS did not violate his constitutional rights when he and his coworkers voted someone else into the job.

■ Finally, Stone claims that the district court erred in awarding costs to the defendants. Specifically, Stone objects to the assessment of deposition costs incurred after the close of discovery. We review for an abuse of discretion a claim that the district court erred in assessing costs against a party pursuant to Federal Rule of Civil Procedure 54. Under that rule "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." *See* Fed.R.Civ.P. 54(d)(1). The defendants are the "prevailing party" because the district court granted summary judgment in their favor on all counts. *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 944 (7th Cir.1997). Rule 54(d) creates a strong presumption that the prevailing party will recover costs, but leaves the ultimate decision to the district court's discretion. *Weeks*, 126 F.3d at 945; *Finchum v. Ford Motor Co.*, 57 F.3d 526, 533 (7th Cir.1995). As long as there is statutory authority for allowing a particular item to be taxed as a cost, we will not overturn a district court's decision that the cost was necessary absent a showing of clear abuse of discretion. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir.1991). The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district court must award costs unless it states good reasons for denying them. *See Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 221–22 (7th Cir.1988). The district court was statutorily authorized to award the challenged costs in this case, *see* 28 U.S.C. § 1920(2); *Weeks*, 126 F.3d at 945 (deposition costs and transcripts are authorized costs under § 1920(2)), and we conclude that the district court did not abuse its discretion in awarding them.

AFFIRMED.